NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DANIEL B. FAIJUE,

    Plaintiff,

            v.

CVS PHARMACY,

    Defendant.

Civil Action No. 14-3994 (JAP) (DEA)

**OPINION**

*Pro se* Plaintiff, Daniel B. Faijue ("Plaintiff" or "Faijue"), has filed this action, in which he asserts that his former employer, Defendant CVS Pharmacy, Inc. ("Defendant" or "CVS"), unfairly disciplined and wrongfully terminated him. Before the Court is a motion to dismiss filed by Defendant CVS. Plaintiff has not opposed this motion. The Court decides this motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, the Court grants Defendant's motion.

**I.  Background**

The following allegations are summarized from the Complaint, and must be taken as true in deciding this Motion to Dismiss.[1]

Plaintiff is a former employee of CVS, where he last worked as a stock handler at its distribution center located in Lumberton, New Jersey. Plaintiff began working at CVS on September 10, 2007. The crux of his Complaint concerns certain written warnings that he was given by CVS. Plaintiff alleges that he was unjustly given written warnings on December 27,

---

[1] *See Newman v. Beard*, 617 F.3d 775, 779 (3d Cir. 2010) ("We accept all factual allegations as true, construe the amended complaint in the light most favorable to [the plaintiff], and determine whether, under any reasonable reading of the…complaint, he may be entitled to relief.").

2012, and April 11, 2013, for being late to the workstation to which he was assigned. In his Complaint, Plaintiff describes how every worker has to be at his or her assigned workstation within five minutes of the beginning of the shift. A worker can find out where he or she is assigned by checking the bulletin. Plaintiff alleges that he was late to his assigned workstation on these occasions because the schedule was illegible, and therefore he could not determine where within the facility he should report for that shift. He further alleges that other supervisors confirmed that the handwriting on the schedule was illegible, but he still got a written warning for not being on time. Plaintiff alleges that he complained to the shift manager about the unfairness of these written warnings, but nothing was done in response. *See* Compl. ¶ 6.

Plaintiff further alleges that he received another unfair written warning on February 13, 2013, for not placing his initials on a case of merchandise he was stocking in the warehouse. According to Plaintiff, it was unfair for CVS to issue him a written warning for failing to follow the proper stocking procedures because he was trained as a Stocker in about November 2012, but then placed in a different function for three months. When he finally was placed as a Stocker, he alleges that he requested additional training because he did not remember the procedures on which he was trained three months earlier. Plaintiff asserts that this request to receive additional training was denied. Therefore, he believes it was unfair that he received a written warning for not following proper stocking procedure his first day as a Stocker. *See* Compl. ¶ 3.

Plaintiff then alleges that on April 4, 2013, he was wrongly disciplined for riding a stocking cart, which is a safety violation. He states that he was sent by his supervisor to find a stocking cart, because there was no working cart available. Plaintiff found a stocking cart, brought it to his area, and starting working. He then alleges that the manager came over and accused him of riding the stocking cart. Plaintiff denied that he had done so, but was nonetheless

sent home and required to sign certain documents before returning to work. He alleges that he complained to Human Resources both in writing and in person but nothing was done. *See* Compl. ¶ 4.

According to Plaintiff, CVS evaluated his performance as a Stock Handler, in part, by measuring his productivity in completing the tasks he was assigned on a timely basis, which was monitored by a computer. Plaintiff alleges that CVS wanted its employees to have a "score" of at least 95%; an employee's failure to have a productivity score of 95% would lead to the employee's dismissal. Plaintiff asserts that on or about August 16, 2013, his CVS manager accused him of improperly using a computer code which, in effect, paused the monitoring of his productivity. Plaintiff admits that he was using this code, but alleges that he was given permission to use the code by a supervisor in order to "pause" his monitoring during periods of the work day when he was sent to work in another department. Plaintiff was suspended for five days without pay while the matter was investigated. Plaintiff was asked to return to work, but asked to sign a document before returning to work. According to Plaintiff, this document stated that he "cheated the system" in order to get a higher percentage so as to receive incentive pay. *Id.* at ¶ 5. Plaintiff asserts that he signed this document because he wanted to return to his job. He argues that he complained to HR about the suspension and being asked to sign the coaching and counseling form, but that nothing was done in response. *See id.*

Finally, Plaintiff claims that he was unjustly disciplined on or about November 21, 2013, when a CVS manager cited him for removing cases from the front (and the middle) of a pallet of boxes that were shrink-wrapped together, as opposed to the top of the pallet of boxes. Plaintiff asserts that he had to remove the cases this way because his stocking cart was not working properly. Plaintiff alleges that he told his immediate supervisor that the cart was not working,

and his supervisor told him to "work with what [he] had." *Id.* at ¶ 2.  During his break, his manger allegedly walked into his zone and saw that Plaintiff was removing boxes in a way that violated CVS safety guidelines.  She then called him into her office and sent him home for the day.  The next day, Plaintiff was terminated by CVS for severe misconduct.  *Id.* at ¶ 1–2.

On or about May 12, 2014, Plaintiff filed this action in the Superior Court of New Jersey, Law Division, Mercer County.   Defendant CVS was served on May 27, 2014, and timely removed the matter to this Court on June 20, 2014.  This Court has subject matter jurisdiction in this case based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

## II.     Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  All reasonable inferences must be made in the Plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).  When assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.  Any legal conclusions are "not entitled to the assumption of truth" by a reviewing court.  *Id.* at 679. Rather, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.*  *See also Fowler*, 578 F.3d at 210 (explaining that a proper complaint "must do more than allege a plaintiff's entitlement to relief").  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (internal quotation omitted).  A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (emphasis added).

## III.  Discussion

While Plaintiff's Complaint does not identify any specific statutes or common law violated by CVS, it appears that he alleges that CVS subjected him to unfair treatment that culminated in the termination of his employment.  In other words, Plaintiff alleges that he was wrongfully terminated by CVS.  In New Jersey, however, "an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine." *Witkowski v. Thomas J. Lipton*, 136 N.J. 385, 397 (1994) (citing *English v. College of Medicine & Dentistry*, 73 N.J. 20, 23 (1977)).  "An employment relationship remains terminable at the will of either an employer or employee," absent a contract providing otherwise.  *Id.*; *see also Bernard v. IMI Sys., Inc.*, 131 N.J. 91, 105–06 (1993) ("Today, both employers and employees commonly and reasonably expect employment to be at-will, unless specifically stated in explicit, contractual terms."); *Lapidoth v. Telcordia Technologies, Inc.*, 420 N.J. Super. 411, 420 (App. Div. 2011).

5

There are a few exceptions recognized by New Jersey courts to the employment-at-will doctrine.  An employer may not, for example, "act contrary to a clear mandate of public policy" when they terminate an at-will employee.  *See Bernard*, 131 N.J. at 105–06; *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 73 (1980) ("[E]mployers will know that unless they act contrary to public policy, they may discharge employees at will for any reason.").  Likewise, "an employer may not fire a worker for a discriminatory reason." *Witkowski*, 136 N.J. at 398 (citing N.J. Stat. Ann. § 10:5-1 to -28).

Here, Plaintiff has failed to allege any facts that allow for a plausible inference that he was anything but an at-will employee.  The Complaint also lacks any allegations that any alleged unfair or wrongful treatment by CVS was contrary to public policy, due to Plaintiff's membership in a protected class, or in violation of any statute or common law.  Rather, Plaintiff's Complaint consists entirely of allegations regarding CVS's "unfair" or "unjust" conduct.  Such allegations, without more, are not enough to allow a claim to go forward.  As alleged, Plaintiff was an at-will employee who could be fired with or without cause.  Accordingly, CVS could fire Plaintiff "for good reason, bad reason, or no reason at all." *Witkowski*, 136 N.J. at 397.  Without allegations indicating that CVS's decision to terminate Plaintiff was "based on criteria other than those proscribed by law," this Court may not second-guess a private employer's business judgment or personnel decisions.  *Jason v. Showboat Hotel & Casino*, 329 N.J. Super. 295, 306 (App. Div. 2000) (citing *Davis v. Rutgers Cas. Ins. Co.*, 964 F. Supp. 560, 573 (D.N.J.1997); *Peper v. Princeton University Board of Trustees*, 77 N.J. 55 (1978)).  Accordingly, Plaintiff has failed to identify a plausible claim for relief, and his Complaint must be dismissed.  *See Iqbal*, 556 U.S. at 678–79 (citing Fed. R. Civ. P. 8).

## IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is granted. An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: January 15, 2015